THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LAFFON GLYMPH,<br><br>        Plaintiff,<br><br>V.<br><br>CT CORPORATION SYSTEMS AND COMPUCOM,<br><br>        Defendants, | **Case No. 2:21-cv-01704-JHC**<br><br>**Plaintiff's Opposition to Defendant's Motion for Summary Judgment**<br><br>**NOTE ON MOTION CALENDAR: December 30, 2024** |

I. INTRODUCTION

Plaintiff, Ms. Glymph, respectfully submits this response in opposition to Defendant CompuCom's Motion for Summary Judgment. As demonstrated herein, genuine issues of material fact exist regarding whether CompuCom willfully violated the Family and Medical Leave Act (FMLA) by terminating Ms. Glymph's employment 10 days after returning from a protected activity. Summary judgment is therefore inappropriate.

Defendant willfully violated Plaintiff's FMLA rights by terminating Ms. Glymph's employment 10 days after her return from FMLA leave. The Defendant intentionally and flagrantly disregarded the provisions of the FMLA. Under the liberal pleading standards of the Federal Rules of Civil Procedure, the Defendant willfully retaliated against Plaintiff by failing to provide reasonable accommodations, altering her PTO, making discriminatory comments regarding her disability, denying her short-term disability benefits, and causing an adverse employment action.

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

1

Laffon Glymph
jojodashawn@msn.com
425-652-0715

These actions were willful retaliations by the Defendants. Accordingly, Defendants summary Judgement motion should be denied.

The ninth circuit found Glymph's allegations establish that her leave was causally connected to her termination and that defendant's termination of Glymph was willful. See Olson v. United States ex rel. Dep't of Energy, 980 F.3d 1334, 1339 (9th Cir. 2020) ("[T]o benefit from the FMLA's three-year statute of limitations [for willful violations of the Act], a plaintiff must show that her employer either knew or showed reckless disregard for whether its conduct violated the Act."); Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002) ("[C]ausation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity . . . [b]ut timing alone will not show causation in all cases; rather, in order to support an inference of retaliatory motive, the termination must have occurred fairly soon after the employee's protected expression."); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed,

## II. FACTUAL BACKGROUND OF EVENTS

On October 8, 2018, I started having severe pain in my upper left last tooth. I had been experiencing severe headaches for about a week, and I couldn't sleep for the previous two weeks. I reached out to Aden Dental in Bellevue and explained what I was experiencing at that moment. I stated to them, I had some dental fillings done on the left side of my mouth previously

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

2

Laffon Glymph
jojodashawn@msn.com
425-652-0715

at Peak Dental in Bellevue and the dentist at that time didn't align my fillings properly with my other teeth. My neck feels swollen and my airway feels as if it's closing. I stated, I was having difficult time breathing. I was told to come in for an emergency appointment for an exam. I did- Please see chart notes- Attached Document dated 10.8.2018-Exhibit A 1.

Aden Dental scheduled an emergency oral surgery on 10/11/2018.  I had an emergency oral surgery of a broken molar tooth filled with mercury removed from my mouth which caused an infection to seep through my body. After having the tooth removed in hopes it would eliminate the discomfort and problem, the condition continued to persist even more intensely.

     1. On 10/15/2018 I notified Brady Ruck Director of Business Operations of CompuCom/ Excell – Email notification Exhibit B

     2. On 10/15/2018 I went back to treating dentist at Aden Dental described the discomfort I was experiencing after extraction.

1. Severe pain on the left side and airway tightness.

2. Burning pain in the face and neck.

3. Pain in neck, jaw, and throat.

4. Painful to swallow.

5. Neck pain, teeth pain, and abdominal discomfort.

6. Infected teeth.

7. Difficulty breathing with associated tightness in mouth, throat, neck, face, and chest.

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

3

Laffon Glymph
jojodashawn@msn.com
425-652-0715

3. On 10/15/2018 later that night paramedics were called, and I was rushed to Overlake Hospital - Please see EMT 10.15.2018 intake document-Exhibit C

4. 10/18/2018 Another oral surgery was done in hopes to correct the symptoms I was experiencing. As my mouth started to heal, I was still having airway problems and fighting an infection throughout my body from the broken tooth with mercury filling.

5. My medical doctor Steven Hall requested I be put on FMLA with a reduce work schedule of 6 hours per day 5 days a week and I work from home.

Brady Ruck stated in an email I wasn't approved to work from home. Exhibit B

6. FMLA approved from 10/15/2018 to 11/15/2018. Dated 11/8/2018 Exhibit E

7. I contacted CompuCom's benefits department regarding utilizing my Short-term disability benefits, I was told there was a waiting period from October 15, 2018, through October 21, 2018. Benefits would be approved from October 22, 2018, through November 15, 2018.

8. My Short-term disability benefits were denied, and the denial reason is very contradictory from the FMLA approval which they both have the same criteria to qualify. I didn't receive the denial letter until after 1/2/2019 well after I was terminated from CompuCom. Exhibit G

9. On November 14, 2018 I wrote an email to the Director of HR regarding my PTO hours were adjusted to a negative balance the week of October 15th, 2018. See Exhibit F

10. Appeal of Short-Term Disability Benefits 4/10/2019 Exhibit H

11. Reinstatement of my Short-Term Disability Benefits Approved 4/29/2019 Exhibit I

**MATERIAL FACTS / EVIDENCE**

Dr. Steven Hall's medical notes 10/1/2018 EXHIBIT A1

Unexpected Medical Emergency 10/15/2018 EXHIBIT A

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

4

Laffon Glymph
jojodashawn@msn.com
425-652-0715

EMT 10/15/2018 EXHIBIT C

Approved for FMLA from 10/15/2018 thru 11/15/2018 EXHIBIT E

Failure to provide reasonable accommodations 10/15/2018 EXHIBIT B

Denied My Short-Term Disability Benefits. 1/2/2019 EXHIBIT G

Discriminating comments regarding my disability 1/2/2019 EXHIBIT G

Altering My PTO 11/14/2018 29 U.S.C. § 2615 EXHIBIT F

Terminated 11/26/2018. 10 days after returning to work from FMLA

Appeal filed on Short-Term Disability Benefits 4/10/2019 EXHIBIT H

Reinstatement of my Short-Term Disability Benefits Approved 4/29/2019 EXHIBIT I

EEOC Filed 8/14/2019

EEOC Response 2/10/2020

EEOC 90 day right to sue letter came at a time when Governor Jay Inslee in

February 29, 2020, declared a state of emergency in all counties in the state of Washington due

to the public health emergency caused by the corona virus disease

2019 ("COVID-19"); Exhibit J

United States District Court Western District of Washington

The state was still under exigent circumstances see General Order No. 08-2 Reflects

still under a state of emergency May 13, 2020.

Signed by Chief United States District Judge Ricardo S. Martinez Exhibit K

The Defendants willfully retaliated against me and intended to cause me financial hardship,

unjust pain, and suffering, by violating the, WFLA, and my FMLA rights. 29 U.S.C. §

2617(c)(2).

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

5

Laffon Glymph
jojodashawn@msn.com
425-652-0715

The defendant actions willfully were retaliatory, malicious, and set out to cause financial hardship and unnecessary burden.

It took 6 months after termination for me to receive my STD Benefits which I was entitled to at the time of my medical leave.

The Defendants CompuCom System Inc violated numerous federal and state laws in the unlawful wrongful termination of the Plaintiff Laffon Glymph. The Defendants have deprived the Plaintiff of her job and severely affected the substantial interest she had in her reputation and her ability to earn a living. The Plaintiff was further denied access to certain benefits to which she was entitled to under Defendants's employee benefit plan. CompuCom System Inc, wrongful termination of the Plaintiff Laffon Glymph was willfully retaliatory, malicious, unreasonably discriminatory, and set out to cause financial hardship and unnecessary financial burden for Ms. Glymph exercising her FMLA rights. All in a willful violation of The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq., ("FMLA")

The Defendants exhibited ill will, malice, improper motive, and indifference to Plaintiff's FMLA, WFLA rights. by forcing her to take medical leave without pay or benefits. 29 U.S.C. § 2615 § 2617

On October 15th, 2018, the Plaintiff notified Brady Ruck Director of Business Operations of CompuCom/ Excell regarding her medical condition.

Exhibit B

Plaintiff's medical doctor Steven Hall requested Plaintiff be put on FMLA with a reduce work schedule of 6 hours per day, 5 days a week and she work from home. Brady Ruck stated in an email Plaintiff wasn't approved to

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

6

Laffon Glymph
jojodashawn@msn.com
425-652-0715

work from home. Exhibit B

Ms. Glymph was placed on FMLA for a serious health condition on October

15th, 2018, thru November 15the 2018. For the following reason- unable to

perform the essential functions of your job. Exhibit E

Plaintiff contacted CompuCom's benefits department regarding utilizing her

Short-term disability benefits, Plaintiff was told there was a waiting period from

October 15, 2018, through October 21, 2018. Benefits would be approved from

October 22, 2018, through November 15, 2018. Plaintiff's Short-term disability

benefits were denied January 2nd, 2019, well after Ms. Glymph was terminated by

CompuCom Systems Inc, on November 26,2018. Denial reason was contradictory

from the FMLA approval. Exhibit G

The Defendants states: After review of your STD claim, it has been determined

that you do not qualify for benefits under CompuCom's Short-Term Disability

Plan, therefore, your request for benefits is denied from 10/15/2018 through

11/15/2018. This determination is based on the following STD plan provision(s):

You are considered Disabled if, solely because of a covered Injury or Sickness,

you are:

1. unable to perform all the material duties of your Regular Occupation, and

2. unable to earn 80% or more of your Covered Earnings from working in your

Regular Occupation and

3. under the regular care of a doctor.

Plaintiff met all three qualifying provisions.

Plaintiff Appealed Short-Term Disability Benefits 4/10/2019 Exhibit H

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

7

Laffon Glymph
jojodashawn@msn.com
425-652-0715

On 4/29/2019 Short-Term Disability Benefits Approved and Reinstated Exhibit I

On November 14,2018 the Plaintiff wrote an email to the Director of HR

regarding her PTO hours were adjusted to a negative balance the week of October

15th, 2018. See Exhibit F

For 30days the plaintiff had no income while on FMLA and 10days after

returning from FMLA no income and terminated on the 10th day. CompuCom

Systems Inc, wrongful termination of the Plaintiff was willful retaliation of Ms.

Glymph exercising her FMLA rights, CompuCom deliberately showed reckless

disregard for the matter of whether its conduct was prohibited by the statute, and

intentionally set out to cause financial hardship by loss of wages, entitled benefits,

and adverse employment action. The Defendants conduct was malicious,

unreasonably discriminatory, and set out to cause financial hardship and

unnecessary financial burden. All in a willful violation of The Family and Medical

Leave Act 29 C.F.R. § 825.220 (c) The Act's prohibition against interference

prohibits an employer from discriminating or retaliating against an employee or

prospective employee for having exercised or attempted to exercise FMLA rights.

For example, if an employee on leave without pay would otherwise be entitled to

full benefits (other than health benefits), the same benefits would be required to be

provided to an employee on unpaid FMLA leave. By the same

token, employers cannot use the taking of FMLA leave as a negative factor in

employment actions, such as hiring, promotions or disciplinary actions; nor can

FMLA leave be counted under no fault attendance policies. § 2617. Enforcement

(a) Civil action by employees (1) Liability Any employer who violates section

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

8

Laffon Glymph
jojodashawn@msn.com
425-652-0715

2615 of this title shall be liable to any eligible employee affected— (A) for damages equal to— (i) the amount of— (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation.

Damages

1.Willful violation of FMLA- Section 105 of the FMLA prohibits retaliation. Employers cannot interfere with, restrain, or deny a person the right to exercise or attempt to exercise any FMLA right.

2.Interference with FMLA-29 U.S.C. § 2615(a)(1) provides that "[i]t shall be unlawful for any employer to interfere 53 with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the 54 FMLA]." Claims brought under § 2615(a)(1) are denominated "interference" claims.

3.FMLA Discrimination/ willful retaliation-§ 825.220 Protection for employees who request leave or otherwise assert FMLA rights.

4.Wrongful Termination- The FMLA provides, among other rights, a total of twelve (12) workweeks of leave during any one year to an eligible employee "unable to perform the functions of [his or her] position" due to "a serious health condition." 29 U.S.C. § 2612 The employee has an accompanying right to return to the same or an equivalent position at the conclusion of the leave period." Reed v. Buckeye Fire Equip., 241 F. App'x 917, 923 (4th Cir. 2007) (citing 29 U.S.C. § 2614(a)(1) (D).). 5. The Plaintiff, as a result of the Defendant's, has suffered lost wages, back pay, front pay, benefits, medical

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

9

Laffon Glymph
jojodashawn@msn.com
425-652-0715

expenses, emotional distress, liquidated damages, punitive damages and other

damages for which she will show at trial of this cause of action

## **PIP 7/30/2018**

Background history and PIP

Brady Ruck has tried to maliciously slander my work ethics and performance at eXcell. When I first started working for eXcell, their payroll team was experiencing significant payroll issues from missed deliverables, contractors being short paid or not paid at all. They had a 50% error rate and bad reviews on Glassdoor, concerning payroll issues.

Within a couple of months working in the payroll analyst role, I was able to reduce payroll errors by 95%. I've never left my work unfinished and in payroll that isn't an acceptable option on an off-cycle or on-cycle payroll period. I worked late hours on a regular basis and if I wasn't in the office I was working from home to meet operational deadlines. In 2017 I was awarded the eXcell excellence award and given a cash bonus for my excellent work, ethic, and dedication to turning around the payroll department at eXcell a division of CompuCom.

In August 2017, I went to Wichita, Kansas, to visit my grandfather, who passed away shortly after I left. By the end of 2017, I started to experience health challenges.

**Overlake Hospital visit during this time period.**

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment                                    10

Laffon Glymph
jojodashawn@msn.com
425-652-0715

**1. On 2/2/2018- Brady and I had my first annual review.**

During my annual review with Brady Ruck, I disclosed the health issues I had been experiencing.

I explained to Brady that there was something wrong with my neck and mentioned that my

naturopathic doctor had diagnosed a parasitic infection, likely from drinking tap water while I

was visiting my grandfather in Wichita Kansas.

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

11

Laffon Glymph
jojodashawn@msn.com
425-652-0715

**2. On 7/30/2018- I was put on my first PIP the outline is below:**



**CompuCom.**

*Original Document. given to me in meeting*

| Plan Completion- Associate has <u>**successfully completed**</u> the Performance Improvement Plan. |
| --- |

Associate Signature: _____    Date: _____

Manager Signature: _____    Date: _____

### Performance Improvement Plan

| Associate Name | Job Title |
| --- | --- |
| Laffon Glymph | Finance II |

| Manager Name | Date |
| --- | --- |
| Brady Ruck | 7/30/2018 |

The purpose of this Performance Improvement Plan is to identify performance and/or behavior deficiencies and to provide a clear action plan for improving performance to an acceptable level. Your Manager will work with you to provide the training and support necessary for the successful completion of this Plan.

**Has a verbal discussion taken place? Yes  If so date:**

**I. Outline of performance and/or behaviors that are below expectations, with dates and times, where applicable.**

Laffon, despite our verbal discussions outlining your performance deficiencies in two critical areas of your position, your performance has continued to cause concerns within our department. This, in turn, does affect other departments within eXcell and requires further attention.

1. Your in-office attendance during crucial reporting period of payroll - Over the last 3 months we have discussed your need to be in the office more during regular business hours to assist with payroll questions and concerns, especially Mondays and Wednesdays of payroll weeks. You have been repeatedly reporting to the office at or after 10:30AM, which is after the deadline that is set for other departments to reach out to you for assistance with their questions/concerns. This has resulted in corporate payroll having to make educated decisions about process on behalf of eXcell.

2. Finalizing payroll processing documentation – You were assigned to update processing documentation surrounding payroll processes to cross-train the finance department of eXcell approximately at the end of 2017. I have explicitly asked you to have the process documentation ready and allow your team members the chance to run payroll based off that documentation. Most recently, I asked on 6/15 for a final version to be ready to review with the team no later than 6/22 – giving one week as I was told multiple times over prior months that you just had to make some tweaks to what you had. You were out of the office on 6/22, and sent me a draft version at the end of the working day.  As this has not happened, the team is not cross-trained as they haven't had the opportunity to do so autonomously, which puts our department at a disadvantage if you are not present to process payroll.

**II. Outline of required level of performance and/or acceptable behavior.**

1. You must report to the office no later than 9:30AM Monday through Friday unless otherwise discussed and approved by myself or when using PTO.  Working from home must be requested and approved in advance.  If not requested and approved in advance, you will have to use PTO for that time.

2. You will provide status updates and meet deadlines that have been set.

Revised 3/2016

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

12

Laffon Glymph
jojodashawn@msn.com
425-652-0715

III. **Outline of action plan to improve performance and/or behavior. Include how results will be measured and a timeframe for improvement.**

A)  Manager Input

Update Workday with all time off utilized to date.
Send daily the new hire activity from Workday with statuses.
Send daily the termination activity from JobDiva with statuses.
A final version of the payroll processing documentation SOP must me completed no later than Tuesday, August 14th for my review.

B)  Associate Input

Laffon committed during our review today, 7/30/18, to put her best effort forward during this period.

IV. **Follow Up/Progress**

Subsequent Review Dates:  July 30, 2018 and daily on attendance in-office

Projected Final Review Date: August 31, 2018

Comments (Manager and/or Associate)
*Use additional space as needed*

**Associate Acknowledgement**

I understand the following:

- My signature below acknowledges receipt and discussion of the Plan, but does not indicate my agreement or disagreement with this Plan.  If I disagree with any of the statements made in this Plan, I understand that I may submit a written statement explaining my position.

- A copy of this Plan will be included in my Associate Profile in Workday.

- I am expected to react with professionalism to this Plan.  Any inappropriate discussions of this Plan, including discussions with any customer or client, or any adverse changes in behavior can result in further disciplinary action, up to and including termination.

- I am expected to demonstrate immediate, significant and sustained improvement in performance and/or behavior.  Termination can occur at any time if adequate progress is not made and sustained.  In addition to meeting the performance objectives of this Plan, all other job duties must be performed satisfactorily.

- CompuCom may amend or modify its policies and procedures at any time with or without notice.

Revised 3/2016

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

13

Laffon Glymph
jojodashawn@msn.com
425-652-0715

- This document does not create any contractual obligation between me and CompuCom. My employment remains on an at-will basis for an indefinite duration, and may be terminated by either party at any time for any reason, with or without notice and with or without cause.

- I am expected to demonstrate sustained improvement in performance and/or behavior. If adequate progress is not sustained, further disciplinary action can occur, up to and including termination of employment without additional notice.

| Associate Signature | Date |
|---|---|
| Manager Signature | Date 7/30/2018 |

**V. Plan Amendment (if applicable). This section can be used to extend the PIP.**

| Manager Comments: | |
|---|---|
| | |
| Associate Signature | Date |
| Manager Signature | Date |

Revised 3/2016

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

14

Laffon Glymph
jojodashawn@msn.com
425-652-0715

**My added input to the PIP on 7/30/2018.**

B) Associate Input – email on July 31, 2018

*At the end of 2017 an unexpected health matter was brought to my attention which Brady and I discussed. As I worked through this health problem I continued to perform my role whether that be in the office or from home. As the New Year progressed I was challenged with juggling work and my health. I still strived to put out good quality work even though I never expressed deeply to Brady the health challenges I was experiencing. Before my health issue arouse I was always meeting and exceeding expectations.*

*In May my health started to take another turn which was unexpected and worse than the previous health problem. During this time I continued to come to work or work from home. I've always put my best foot forward even while dealing with major health obstacles and challenges, at times just keeping up with my regular daily duties were a task to say the least. Though other projects like finalizing the payroll processing SOP was even more challenging to focus on with my health taking a scary change. I did however, manage to put together the payroll processing SOP in a rough draft form. I've made some tweaks with it, but I still needed to finalize it with our new orientation process which I've received confirmation today 7/31/18 by Linda Clinton; she's ok with the new process. I will have this completed by next week.*

*As I'm on the recovery side of my health problem, I will still continue to provide good quality work in my role.*

On 8/31/2018- Brady Ruck and I was supposed to meet on 8/31/2018 unfortunately, that didn't occur.

On 9/19/20218 Brady tried to extend my PIP at that point I challenged Brady for the reason he felt he needed to extend the PIP.

On 9/21/2018

I sent him a list of questions see below:

**Outline in PIP**

**From Laffon Glymph**

**9/21/18**

**In Response to PIP**

**The purpose of this document is stated: Performance Improvement Plan-**

- **It states: To identify performance and or behavior deficiencies.**

**It also asks, has a verbal discussion taken place? You said, Yes.**

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

15

Laffon Glymph
jojodashawn@msn.com
425-652-0715

An annual review was done on 2/2/18. At that time I disclosed to Brady Ruck, my health challenges which is documented in "Performance Improvement Plan"

•        It also states: To provide a clear action plan for improving performance to an acceptable level.

First notice of the Performance Improvement Plan was discussed on 7/30/18

I.        Outline of performance and or behaviors that are below expectations with dates and times.

The timeline you've indicated was 6/15-6/22

1.        Office Attendance- Please measure office attendance for the 30 day performance improvement plan. From 7/30/18 to 8/30 we were supposed to revisit this PIP at the end of 30 days. Please provide metrics on how my performance was evaluated in the following areas you've outlined within the PIP dates.

2.        In the PIP it clearly states: Include how results will be measured and a timeframe for improvements. Our timeframe was 7/30 to 8/30

A)        How was my performance and behavior measured?

B)        What metrics is or was used to determine this?

C)        What is my performance or behavior compared to?

D)        Where is the documentation in justifying extension on this PIP?

E)        Why is my privilege for working from home being restricted? After clearly displaying my productivity while being criticized for my work ethics and efficiency in the month of June. All the while dealing with a critical health condition.

F)        Please be advised I refuse to sign the PIP for the above reasons.

3.        Payroll processing documentation- The week of 6/15 to 6/22; you stated on 6/15 for a final version of the payroll processing documentation. 6/22 I sent you a draft of the payroll processing manual on 6/25/18 Leo ran payroll from that manual.

 On 6/13/18 I sent you an email:

(See below)  From: Glymph, Laffon (lg103298)

Sent: Wednesday, June 13, 2018 6:47 PM

To: Ruck, Brady (br102892) <Brady.Ruck@excell.com>

Subject: Just so you are aware

Hi Brady,

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment                16

Laffon Glymph
jojodashawn@msn.com
425-652-0715

My doctor put me on antibiotics last night and I'm super sensitive to taking antibiotics, so I'm going to work from home tomorrow and Friday maybe even Monday until I finish the medication. It makes me feel really horrible for hours after I take the medication.  I took one last night and this morning and I felt pretty awful.

The treatment is for seven days so Monday would be my last dose.

Laffon


Laffon Glymph eXcell, a division of CompuCom Systems, Inc.

Payroll

Office 425-974-6345

laffon.glymph@excell.com

11900 NE 1st Street suite 200, Bellevue, WA  98005

www.excell.com

On 6/14/18 I sent another email to the team-

From: Glymph, Laffon (lg103298)

Sent: Thursday, June 14, 2018 9:04 AM

To: Young, Taylor (ty100422) <Taylor.Young@excell.com>; Li, Leo (sl102358) <Leo.Li@excell.com>; Becker, Simone (sibecker) <Simone.Becker@excell.com>

Cc: Ruck, Brady (br102892) <Brady.Ruck@excell.com>

Subject: New Hire Set up

Hi Taylor and Leo,

Can you guys set up the new hires today? I'm on medication and it's making me feel very sick. I'm going to the emergency room.


Laffon

Laffon Glymph
jojodashawn@msn.com
425-652-0715

On 6/14/18 you sent me a request on new hire set ups- After I asked Taylor and Leo to set the new hires up.

On 6/15/18 I responded to your email- (See below)

From: Glymph, Laffon (lg103298)

Sent: Friday, June 15, 2018 7:46 AM

To: Ruck, Brady (br102892) <Brady.Ruck@excell.com>

Subject: RE: New Hire Set up

The attached list is for 6/10/18 to 6/16/18

New hires were up to date for the previous week of 6/3 to 6/9.


Laffon Glymph eXcell, a division of CompuCom Systems, Inc.

Payroll

Office 425-974-6345

laffon.glymph@excell.com

11900 NE 1st Street suite 200, Bellevue, WA  98005

www.excell.com


From: Ruck, Brady (br102892)

Sent: Thursday, June 14, 2018 10:34 AM

To: Glymph, Laffon (lg103298) <Laffon.Glymph@excell.com>

Subject: RE: New Hire Set up

Based on the list that I had someone else pull together for me, it looks like these haven't been processed in a while.  When was the last that you setup new hires?

Brady Ruck | eXcell, a division of CompuCom Systems, Inc.

Finance Director

425-974-6435 – office

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

18

Laffon Glymph
jojodashawn@msn.com
425-652-0715

206-331-0572 – cell

brady.ruck@excell.com

11900 NE 1st Street suite 200, Bellevue, WA  98005

www.excell.com


From: Glymph, Laffon (lg103298)

Sent: Thursday, June 14, 2018 9:04 AM

To: Young, Taylor (ty100422) <Taylor.Young@excell.com>; Li, Leo (sl102358) <Leo.Li@excell.com>; Becker, Simone (sibecker) <Simone.Becker@excell.com>

Cc: Ruck, Brady (br102892) <Brady.Ruck@excell.com>

Subject: New Hire Set up


Hi Taylor and Leo,


Can you guys set up the new hires today? I'm on medication and it's making me feel very sick. I'm going to the emergency room.


Laffon


In response to setting up new hires

6/11/18 was a payroll week, as you are aware it takes a couple of days to finalize payroll. During payroll weeks it's impossible to get new hires set up by the timeline of Thursday 11:00 A.M. We've had this discussion multiple times as well as our current new hire process is quite manual with our Replicon system.

On 6/19/18- I sent you an email-From: Glymph, Laffon (lg103298)


Sent: Tuesday, June 19, 2018 9:50 AM

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

Laffon Glymph
jojodashawn@msn.com
425-652-0715

**To: Ruck, Brady (br102892) <Brady.Ruck@excell.com>; Becker, Simone (sibecker) <Simone.Becker@excell.com>; Young, Taylor (ty100422) <Taylor.Young@excell.com>; Li, Leo (sl102358) <Leo.Li@excell.com>**

**Subject: Working from home**

**Hi Team,**

**I'm working from home today, still not feeling well.**

**While I was quite ill, I continued to work from home and provide quality work, but continued to be criticized for all my efforts. Brady- you were out of the office from 6/18 to 6/21. Considering my health condition I managed to send you a draft version on 6/22/18. From 6/14/2018 to the end of June 2018 I've constantly been ridiculed for my quality of work and performance even though I have documentation to reflect the opposite of what has been written in certain regards.**

**Email to a colleague**

**From: Glymph, Laffon (lg103298)**

**Sent: Tuesday, June 19, 2018 10:13 AM**

**To: Becker, Simone (sibecker) <Simone.Becker@excell.com>**

**Subject: RE: Working from home**

**Thanks Simone. I have an infection throughout my body from an insect bite. I'm highly sensitive to antibiotics and the medicine is just as bad as the infection. This has been truly hard on me.**

**Do you think we can do a WebEx today to see if you can fix my new hire import file?**

**Laffon Glymph eXcell, a division of CompuCom Systems, Inc.**

**Payroll**

**Office 425-974-6345**

**laffon.glymph@excell.com**

**11900 NE 1st Street suite 200, Bellevue, WA  98005**

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

20

Laffon Glymph
jojodashawn@msn.com
425-652-0715

www.excell.com

From: Becker, Simone (sibecker)

Sent: Tuesday, June 19, 2018 10:05 AM

To: Glymph, Laffon (lg103298) <Laffon.Glymph@excell.com>

Subject: RE: Working from home


Home you feel better…


Simone Becker | eXcell, a division of CompuCom Systems, Inc.

direct 425.974.6384

main  425.974.2000

Simone.Becker@excell.com

11900 NE 1st St., Ste. 200, Bellevue, WA  98005

www.excell.com


From: Glymph, Laffon (lg103298)

Sent: Tuesday, June 19, 2018 9:50 AM

To: Ruck, Brady (br102892) <Brady.Ruck@excell.com>; Becker, Simone (sibecker) <Simone.Becker@excell.com>; Young, Taylor (ty100422) <Taylor.Young@excell.com>; Li, Leo (sl102358) <Leo.Li@excell.com>

Subject: Working from home


Hi Team,


I'm working from home today, still not feeling well.

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment                    21                    Laffon Glymph
jojodashawn@msn.com
425-652-0715

**Laffon**

**Continuing on from #2-**

**I disagree with missed payroll for some associates. As long as I've being in this role I've processed all associates pay in a timely manner. Please provide documentation on associates who were not paid in a timely manner.**

**As far as termination compliance- I receive a notification in my inbox which alerts me to terminate an associate. I cross reference the associate termination by reviewing the team mailbox notifications as well. Taylor created a Workday termination report in June 2018 which we currently use to verify terminated associates in Replicon.**

**From: Glymph, Laffon (lg103298)**

**Sent: Tuesday, June 19, 2018 12:25 PM**

**To: Young, Taylor (ty100422) <Taylor.Young@excell.com>**

**Subject: RE: Workday Termination Report**

**How do I access it? I don't see it.**

**Laffon Glymph eXcell, a division of CompuCom Systems, Inc.**

**Payroll**

**Office 425-974-6345**

**laffon.glymph@excell.com**

**11900 NE 1st Street suite 200, Bellevue, WA  98005**

**www.excell.com**

**From: Young, Taylor (ty100422)**

**Sent: Tuesday, June 19, 2018 12:04 PM**

**To: Glymph, Laffon (lg103298) <Laffon.Glymph@excell.com>**

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment                    22                    Laffon Glymph
                                                          jojodashawn@msn.com
                                                          425-652-0715

**Subject: FW: Workday Termination Report**

**Can you confirm that you have access to run this report?**

**Taylor Young | eXcell, a division of CompuCom Systems, Inc.**

**Finance III**

**direct 425.974.6354**

**Taylor.Young@excell.com**

**11900 NE 1st St., Bellevue, WA  98005**

**www.excell.com**

**From: Young, Taylor (ty100422)**

**Sent: Tuesday, June 12, 2018 1:14 PM**

**To: Glymph, Laffon (lg103298) <Laffon.Glymph@excell.com>**

**Subject: Workday Termination Report**

**Hi Laffon,**

**Can you check if you have access to this report in workday? This is the report that you should be running each week when processing terminations.**

**Thanks,**

**Taylor Young | eXcell, a division of CompuCom Systems, Inc.**

**Finance III**

**direct 425.974.6354**

**Taylor.Young@excell.com**

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

23

Laffon Glymph
jojodashawn@msn.com
425-652-0715

11900 NE 1st St., Bellevue, WA  98005

www.excell.com


Continuation of #2-

  To help us improve the termination process, I created a termination form to assist the RM's in completing termination tasks for exiting associates to improve disabling client approvers and associates in a timely manner.

From: Glymph, Laffon (lg103298)

Sent: Tuesday, June 19, 2018 1:52 PM

To: Ruck, Brady (br102892) <Brady.Ruck@excell.com>

Subject: RE: Termination Notification


I like it in Word because I can print them out have a hard copy when processing payroll to make sure all steps are in alignment. We use a similar form  like this when RM's request for an associates 40 hour PTO payout. That worked well and kept a uniform order. It makes everyone accountable for their part.


Laffon Glymph eXcell, a division of CompuCom Systems, Inc.

Payroll

Office 425-974-6345

laffon.glymph@excell.com

11900 NE 1st Street suite 200, Bellevue, WA  98005

www.excell.com


From: Ruck, Brady (br102892)

Sent: Tuesday, June 19, 2018 1:42 PM

To: Glymph, Laffon (lg103298) <Laffon.Glymph@excell.com>

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

24

Laffon Glymph
jojodashawn@msn.com
425-652-0715

**Subject: Re: Termination Notification**

**I would do this in Excel rather than Word - it makes it easier to pull these together instead of keeping them all entirely separate. Thoughts?**

**Sent via the Samsung Galaxy S8, an AT&T 4G LTE smartphone**

**-------- Original message --------**

**From: "Glymph, Laffon (lg103298)" <Laffon.Glymph@excell.com>**

**Date: 6/19/18 4:32 PM (GMT-05:00)**

**To: "Ruck, Brady (br102892)" <Brady.Ruck@excell.com>**

**Subject: RE: Termination Notification**

**The RM meeting has been moved to Wednesday's now. I think you make a valid point on adding client approvers.**

**I believe with that one added line this would work well.**

**Laffon Glymph eXcell, a division of CompuCom Systems, Inc.**

**Payroll**

**Office 425-974-6345**

**laffon.glymph@excell.com**

**11900 NE 1st Street suite 200, Bellevue, WA  98005**

**www.excell.com**

**From: Ruck, Brady (br102892)**

**Sent: Tuesday, June 19, 2018 1:27 PM**

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

25

Laffon Glymph
jojodashawn@msn.com
425-652-0715

**To: Glymph, Laffon (lg103298) <Laffon.Glymph@excell.com>**

**Subject: RE: Termination Notification**

**Is that all of the detail that we need?  So if someone fills that out for a future term – like the client has requested that the associate ends this Friday but that we shouldn't notify the associate yet – will this give you everything you need?  What about if there is a client approver?  Seems like a good start-**

**The RM meeting was today – so we can review this later this week when I'm back to present at the next meeting.**

**Brady Ruck | eXcell, a division of CompuCom Systems, Inc.**

**Finance Director**

**425-974-6435 – office**

**206-331-0572 – cell**

**brady.ruck@excell.com**

**11900 NE 1st Street suite 200, Bellevue, WA  98005**

**www.excell.com**

**From: Glymph, Laffon (lg103298)**

**Sent: Tuesday, June 19, 2018 1:22 PM**

**To: Ruck, Brady (br102892) <Brady.Ruck@excell.com>**

**Subject: Termination Notification**

**Hi Brady,**

**I would like to present this in the RM meeting tomorrow, what are your thoughts?**

**Laffon**

**Laffon Glymph eXcell, a division of CompuCom Systems, Inc.**

**Payroll**

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

26

Laffon Glymph
jojodashawn@msn.com
425-652-0715

**Office 425-974-6345**

**laffon.glymph@excell.com**

**11900 NE 1st Street suite 200, Bellevue, WA  98005**

**www.excell.com**

**From: Glymph, Laffon (lg103298)**

**Sent: Tuesday, June 19, 2018 2:26 PM**

**To: May, Bettina (bmay) <bettina.may@excell.com>**

**Cc: Ruck, Brady (br102892) <Brady.Ruck@excell.com>**

**Subject: Termination notification Form**

**Hi Bettina,**

**Please add this to the RM meeting tomorrow. To improve payroll processing for termed associates we've added a new requirement for terming associates in Replicon.**

**Let me know if you have questions.**

**Laffon**

**Laffon Glymph eXcell, a division of CompuCom Systems, Inc.**

**Payroll**

**Office 425-974-6345**

**laffon.glymph@excell.com**

**11900 NE 1st Street suite 200, Bellevue, WA  98005**

**www.excell.com**

Brady Ruck did not provide any proof of how my performance was managed, compared to, or metrics no physical documentation, proof showing evidence of his allegations. The only item Brady Ruck Provided to me was an Excel spreadsheet he created himself, which was absolutely falsified.

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment                            27                    Laffon Glymph
                                                         jojodashawn@msn.com
                                                         425-652-0715

*This Keycard log has no validity since it's not system generated by a computer or camera system.)*

See exhibit  R

| Date | Time | Name | Event | Card Number | Location | Event Type | Pointer | Departme |
|------|------|------|-------|-------------|----------|-----------|---------|----------|
| 7/31/2018 | | | | NO ENTRY TO BUILDING USING KEYCARD THIS DAY | | | | |
| 8/1/2018 | | | | NO ENTRY TO BUILDING USING KEYCARD THIS DAY | | | | |
| 8/2/2018 | | | | NO ENTRY TO BUILDING USING KEYCARD THIS DAY | | | | |
| 8/3/2018 | | | | NO ENTRY TO BUILDING USING KEYCARD THIS DAY | | | | |
| 8/6/2018 | | | | NO ENTRY TO BUILDING USING KEYCARD THIS DAY | | | | |
| 8/7/2018 | 13:49:57 | laffon glymph | Access Granted | 63838 | CBR Corridor | 28 | 62710 | [ blank ] |
| 8/7/2018 | 14:10:30 | laffon glymph | Access Granted | 63838 | CBR Corridor | 28 | 62714 | [ blank ] |
| 8/7/2018 | 14:10:55 | laffon glymph | Access Granted | 63838 | Left Lobby | 28 | 62715 | [ blank ] |
| 8/8/2018 | 11:04:37 | laffon glymph | Access Granted | 63838 | Left Lobby | 28 | 62839 | [ blank ] |

CompuCom went to great lengths to cover up their willful retaliation and interference with benefits entitled to me. The Independent Medical Examinations (IMEs) ordered by the defendants were conducted by professionals not in the same medical field as my two doctors. These IMEs were ordered with the intent to discredit my doctors' medical authority over my care.

When I returned to work, I found that an already difficult situation had gotten far worse. My access to several company systems had been denied, and I was not paid on time like other employees who had not returned from leave. On November 26, 2018, I was abruptly terminated. During a conversation with Mr. Ruck and another company representative who was present on the phone, I was informed that my termination was due to my failure to meet the requirements of the July Performance Improvement Plan (PIP). However, a letter from CompuCom later that day stated that they had "longstanding and significant issues with [my] performance," despite me having improved my performance prior to taking leave.

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

Laffon Glymph
jojodashawn@msn.com
425-652-0715

Protected Actions and Retaliation: Requesting an accommodation is a protected action under the Washington Law Against Discrimination (WLAD). Hansen v. Boeing Co., 903 F.Supp.2d 1215, 1218-19 (W.D. Wash. 2012). A causal presumption is created when:

1. I took protected action.

2. The Company had knowledge of the action.

3. I was subjected to an adverse employment action.

Id. at 69 When I took leave to deal with my dental issues, I was engaged in protected activity. The company's response indicates they were aware of the issue; my termination followed ten days after I attempted to return to work.

FMLA Interference and Retaliation: Retaliation under the Family Medical Leave Act (FMLA) requires showing that I requested or took protected leave and was terminated for doing so. Miller v. Fairchild Indus., 797 F.2d 727, 730 (9th Cir. 1986). Retaliatory motive may be inferred from:

1. Circumstantial evidence, such as the employer's knowledge that I engaged in protected activities.

2. The proximity in time between the protected action and the alleged retaliatory employment decision. Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987). I do not need to prove that my FMLA leave was the sole reason for my termination, only that it was one "negative factor" in the decision to terminate me. Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1124 (9th Cir. 2001).

Legal Claims:

 (1) Retaliation Under the Washington Law Against Discrimination: A retaliation claim under

RCW 49.60.210(1) requires showing that:

1. I participated in a statutorily protected activity.

2. CompuCom took an adverse employment action.

3. The protected activity was a motivating factor in the termination. Alonso v. Quest Community

Co., LLC, 178 Wn. App. 734, 735 (2013). Requesting an accommodation is a protected action

under the WLAD. Hansen v. Boeing Co., 903 F.Supp.2d 1215, 1218-19 (W.D. Wash. 2012). A

causal presumption is created when I show that:

1. I took protected action.

2. The Company had knowledge of the action.

3. I was subjected to an adverse employment action. Id. at 69. When I took leave to deal with my

dental issues, I was engaged in protected activity. The company's response indicates they were

aware of the issue; my termination followed ten days after I attempted to return to work.

(3) FMLA Interference and Retaliation: Retaliation under the Family Medical Leave Act

(FMLA) requires showing that I requested or took protected leave and was terminated for doing

so. Miller v. Fairchild Indus., 797 F.2d 727, 730 (9th Cir. 1986). Retaliatory motive may be

inferred from circumstantial evidence and the proximity in time between the protected action and

the alleged retaliatory employment decision. Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir.

1987). The evidence shows that my FMLA leave was a negative factor in my termination.

Like many CompuCom employees in the eXcell division, it was both practical and common for

me to work from home. In my profession, I had never missed significant time off from work. My

work was demanding and required full attention to detail and responsibility. I was dealing with

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

30

Laffon Glymph
jojodashawn@msn.com
425-652-0715

an unexpected medical emergency, which caused a significant financial burden and the loss of my job.

## III. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is only appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The evidence must be viewed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in that party's favor.

## IV. ARGUMENT

(1) Ms. Glymph's serious health issues were medically documented and existed as a record; as a result her condition was clearly a disability under the WLAD. Doe v. Boeing Co., 121 Wn.2d 8, 15, 846 P.2d 531 (1993). A discriminatory motive can be inferred from the temporal proximity between her return from leave and her termination, as well as her employer's unreasonable refusal to allow her to work remotely while she was on leave.  Additionally, Ms. Glymph had resolved the performance issues prior to going out on leave and yet as soon as she returns, CompuCom terminates her employment.

(2)      Retaliation Under the Washington Law Against Discrimination

A retaliation claim under RCW 49.60.210(1) only requires a showing that (i) Ms. Glymph participated in statutorily protected activity; (ii) CompuCom took an adverse employment action; and (iii) the protected activity was a motivating factor in the termination. See Alonso v. Quest Community Co., LLC, 178 Wn. App. 734, 735 (2013).  Requesting an accommodation is a protected action under the WLAD.  Hansen v. Boeing Co., 903 F.Supp.2d 1215, 1218-19 (W.D.

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

31

Laffon Glymph
jojodashawn@msn.com
425-652-0715

Wash. 2012).  A causal presumption is created when Ms. Glymph shows that (i) she took

protected action, (ii) the Company had knowledge of the action, and (iii) she was subjected to an

adverse employment action.  Id. at 69. When Ms. Glymph took leave to deal with her dental

issues, she was engaged in protected activity. The company's response to this indicates they were

aware of the issue; her termination followed ten days after she attempted to return to work.

(3)    FMLA Interference and Retaliation


Retaliation under the Family Medical Leave Act (FMLA) requires a showing that Ms. Glymph

requested or took protected leave and was terminated for doing so. See Miller v. Fairchild Indus.,

797 F.2d 727, 730 (9th Cir. 1986).  Retaliatory motive may be "inferred from circumstantial

evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and

the proximity in time between the protected action and the alleged retaliatory employment

decision." Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987).  Ms. Glymph also need not

prove that her requesting FMLA leave was the only reason or "but for" reason for her

termination, but only that her leave was one "negative factor" in the decision to terminate her.

Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1124 (9th Cir. 2001). The evidence already

developed here makes clear that Ms. Glymph's FMLA leave was a negative factor in the

decision to terminate her.

(4) Causal Connection Between Leave and Termination:

 "The Ninth Circuit found that my allegations establish a causal connection between my leave

and termination, as highlighted in Glymph's case."

Cite Olson v. United States ex rel. Dep't of Energy: "In Olson v. United States ex rel. Dep't of

Energy, 980 F.3d 1334, 1339 (9th Cir. 2020), the court stated that 'to benefit from the FMLA's

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment                    32            Laffon Glymph
                                                  jojodashawn@msn.com
                                                  425-652-0715

three-year statute of limitations for willful violations of the Act, a plaintiff must show that her employer either knew or showed reckless disregard for whether its conduct violated the Act.'"

(5.) Willful Termination:

"The Ninth Circuit recognized the willful nature of Compucom's termination of my employment."

"In Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002), it was established that 'causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity.' This supports my claim, as my termination occurred shortly after my protected medical leave."

(7.) Retaliatory Motive:

The retaliatory motive: "The termination's timing, occurring soon after my protected medical leave, suggests a retaliatory motive, which is further supported by the legal principles in Villiarimo."

(6.) Pro Se Considerations:

 "As a pro se litigant, my filing should be liberally construed, as indicated in Erickson v. Pardus, 551 U.S. 89, 94 (2007)."

## III. STATEMENT OF CLAIM

1. FMLA Interference Claim:

Elements:

Facts

1.) The plaintiff exercised her rights under the Family and Medical Leave Act (FMLA) by Requesting and taking leave due to a serious health condition.

2.) The employee was entitled to benefits under the FMLA.

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

33

Laffon Glymph
jojodashawn@msn.com
425-652-0715

3.) The employer denied the employee those benefits.

4.) The week of October 15, 2018 PTO Benefits altered to a negative balance.

5.) Short-term disability approved then denied on January 2, 2019. Appealed (STD)

6.) April 10, 2019. STD reinstated April 29, 2019.

Law:

1.) 29 U.S.C. § 2615(a)(1): This section addresses interference with rights. It states that it is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under this subchapter.

2.) FMLA Retaliation Claim:

Elements:

Facts:

1.) The plaintiff exercised her FMLA rights due to a serious health condition under the Family and Medical Leave Act. The defendants retaliated against the plaintiff for taking FMLA leave.

2.) While Plaintiff was on a protected activity the defendant willfully started to retaliate against plaintiff on October 15, 2018 by altering PTO to a negative balance, denying short-term disability benefits, denying plaintiff reasonable accommodation request made by plaintiff's treating doctor Steven Hall.

3.) 10 days after Plaintiff returned to work from her protective leave the defendant terminated her employment November 26, 2018. (Adverse action)

Law:

1) Section 105 of the FMLA and section 825.220 of the FMLA regulations prohibit the following actions: prohibits retaliation by employers

3.) FMLA Discrimination Claim:

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

34

Laffon Glymph
jojodashawn@msn.com
425-652-0715

Elements:

Facts:

1.) Plaintiff exercised her rights under the Family and Medical Leave Act (FMLA) by requesting and taking leave due to a serious health condition.

2.) Defendants initially approved short-term disability (STD) and then turned around and denied plaintiff's short-term disability with discriminatory comments such as a 44 year old female off of work on 10/15/18 due to tooth pain with teeth extraction. Although you had complaints of pain, pain alone is not disabling. Short-term Disability benefits denied from 10/15/2018 through 11/15/2018. This determination is based on the following Short term Disability (STD) plan provision(s): You are considered Disabled if, solely because of a covered Injury or Sickness, you are:

1. Unable to perform all the material duties of your Regular Occupation, and

2. unable to earn 80% or more of your Covered Earnings from working in your Regular Occupation and 3. Under the regular care of a doctor. Plaintiff met all three qualifications and these are these are the same qualifications for FMLA

defendants' denial was adverse treatment to the plaintiff's serious health condition.

3) 10 days after returning from FMLA I was wrongfully terminated by the defendant.

Law:

1.) 29 U.S.C. § 2615(a)(2): This subsection deals with discrimination. FMLA makes it unlawful for employers to discharge or discriminate against any individual for opposing any practice made unlawful by this subchapter.

4.) Wrongful Termination Claim:

Elements:

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

35

Laffon Glymph
jojodashawn@msn.com
425-652-0715

Facts:

1.) After 4 weeks of being on FMLA for a serious health condition when plaintiff returned back to work, 10 days later she was terminated.

Law:

1.) The FMLA provides, among other rights, a total of twelve (12) workweeks of leave during any one year to an eligible employee "unable to perform the functions of [his or her] position" due to "a serious health condition." 29 U.S.C. § 2612(a)(1)(D

2.) "The employee has an accompanying right to return to the same or an equivalent position at the conclusion of the leave period." Reed v. Buckeye Fire Equip., 241 F. App'x 917, 923 (4th Cir.

2007) (citing 29 U.S.C. § 2614(a)(1) ).

5.) FMLA Violations Claim:

Elements:

Facts:

1) Interference violations

2) Retaliation violations

3) Discrimination violations

4) Wrongful Termination violation

5) Plaintiff was Eligible for FMLA Benefits

6) Plaintiff was Entitled to take FMLA Leave

7) Termination of employment (Adverse Employment Action)

8) The plaintiff exercised her FMLA rights due to a serious health condition under the Family and Medical Leave Act. (Causation)

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

36

Laffon Glymph
jojodashawn@msn.com
425-652-0715

Law:

1.) 29 U.S.C. § 2615 § 2617, (citing 29 U.S.C. § 2614(a)(1) ). Section 105 of the FMLA and

section 825.220 of the FMLA regulations prohibit the above.

6.) Intentional Infliction of Emotional Distress

Elements:

Facts:

1.) The actions and conduct of the defendants were extreme and outrageous, from the time

plaintiff went on FMLA for a serious health condition. The defendants immediately started to

retaliate against plaintiff. She was unable to use the benefits she was entitled to at the time of

leave. She had to dispute every action of the defendants' actions, while dealing with an

emergency medical condition. The Defendants willfully intended to cause plaintiff financial

hardship, Intentional infliction of emotional distress, unjust pain, and suffering, by violating the ,

WFLA, and FMLA rights. 29 U.S.C. § 2617(c)(2). The defendant actions willfully were

retaliatory, malicious, and set out to cause financial hardship and unnecessary burden. Then after

returning from FMLA Leave plaintiff was terminated to add additional emotional distress,

anxiety,

and financial burden. Even after termination, plaintiff still had to pursue her entitled benefits to

obtain what she was entitled to at the time of leave. Plaintiff had to appeal denial of Short-term

Disability benefits which were reinstated 6 months after termination.

2.) The defendants' actions were intentionally recklessly.

3.) The defendants actions and conduct caused severe emotional distress to the plaintiff who was

completely taken back by the misconduct of the defendants actions, behaviors and unethical

practices to a person having a serious medical health condition. The defendants had a reckless

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

37

Laffon Glymph
jojodashawn@msn.com
425-652-0715

disregard for the plaintiff's health condition.

Law:

1) Restatement (2nd) of Torts, specifically section 46, outlines the legal principle related to Intentional Infliction of Emotional Distress

EVIDENCE

1. Termination Letter after return from a protective activity EXHIBIT L

2. Altering PTO Hours (EXHIBIT F)

3. Absence Status EXHIBIT N

4. Disregard for treating doctor accommodation request. (EXHIBIT B and O)

5. Denying Short term disability claim EXHIBIT G

6. Making discriminating comments on disability claim. EXHIBIT G

7. Hiring IME"s to contradict Laffon's treating doctors EXHIBIT P

8. Using a PIP dated 7/30/2018 for reason of termination EXHIBIT T

9.. Providing false keycard log for the month of August 2018 EXHIBIT R

10. PIP 9.19.2018 extension EXHIBIT U

11. Workday PTO  Exhibit V

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment                    38                    Laffon Glymph
                                                          jojodashawn@msn.com
                                                          425-652-0715

A. Genuine Issues of Material Fact Exist

Pretext for Retaliation: Evidence suggests that CompuCom's stated reasons for Ms. Glymph's termination were pretextual. The timing of her PIP, FMLA leave, and subsequent termination raises questions about whether her FMLA leave was a factor in her discharge. The temporal proximity between her FMLA leave and termination indicates a retaliatory motive.

Performance Improvement Plan (PIP) as a Pretext: Ms. Glymph's placement on the PIP 7/30/2018 and the lack of documented improvement and false keycard excel spreadsheet indicates falsifying documents.

B. CompuCom's Allegations Lack Evidentiary Support

Unsupported Allegations: CompuCom's motion relies on unsupported allegations rather than material, probative evidence. Ms. Glymph has produced evidence showing a pattern of behavior that indicates discriminatory and willful retaliatory motives behind her termination.

C. Legal Precedents Support Plaintiff's Claims

Relevant case law supports the assertion that timing and retaliatory motives can constitute genuine issues of material fact in FMLA cases. Courts have held that temporal proximity, coupled with evidence of pretext, can be sufficient to deny summary judgment.

**<u>Transcript Issues and False Statements</u>**

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

39

Laffon Glymph
jojodashawn@msn.com
425-652-0715

In preparing this opposition, I encountered significant difficulties due to not receiving a copy of the transcripts. As a result, I am unable to validate the authenticity of the transcripts provided by the defense. Moreover, the negative comments made by the defense counsel are false. I do not speak in the manner they have portrayed.

V. CONCLUSION

For the foregoing reasons, genuine issues of material fact exist regarding whether CompuCom willfully violated the FMLA. Therefore, summary judgment is inappropriate, and Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment.

Respectfully submitted

Dated January 26, 2024                           /s/ Laffon Glymph

                                                 Laffon Glymph Pro Se

                                                 I certify that this memorandum contains 7,296 words, in compliance with the Local Civil Rules.

Plaintiff's Opposition to
Defendant's Motion for
Summary Judgment

40

Laffon Glymph
jojodashawn@msn.com
425-652-0715